**L. L. BREWTON LUMBER COMPANY, Inc., Plaintiff-Appellee,**

v.

**CONTINENTAL CAN COMPANY, Inc., Defendant-Appellant.**

No. 71–3544.

United States Court of Appeals, Fifth Circuit.

May 16, 1972.

---

William H. Baker, Bobby L. Culpepper, Holloway, Baker, Culpepper, Brunson & Cooper, Jonesboro, La., for defendant-appellant.

Hiram J. Wright, Winnfield, La., for plaintiff-appellee.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

PER CURIAM:

Continental appeals from an order of the district court cancelling a lease incorporated in a contract for sale and purchase of timber and land lease agreement executed by Brewton's predecessor in title in favor of Continental's assignor. We reverse.

The facts are stipulated. On September 9, 1950, Louisiana Development Company, as seller-lessor, and Mansfield Hardwood Lumber Company, as buyer-lessee, entered into a contract for the lease of 1360 acres of land in Winn Parish, Louisiana, and for the sale and purchase of timber thereon. All rights of the lessee under the agreement were conveyed and assigned to Continental on October 26, 1956 by a subsequent as-

---

6. The Home Insurance Company is not a party to this litigation and a judgment

here may not, therefore, be binding upon it.

signee of Mansfield Lumber. On June 14, 1967, Brewton acquired title to the fee from the Carey Salt Company which had, in 1964, acquired title from Louisiana Development. This conveyance was explicitly subordinated to rights granted in the 1950 agreement as reassigned to Continental. It is undisputed that each of the foregoing transactions was bona fide.

The 1950 agreement Brewton seeks to annul provides for the sale of timber, and the lease of lands for the purpose of cutting and removing existing timber, and the growing, cutting, and removing of timber during the term provided for in the agreement. The lease is for a term certain of nine years, and further grants to the lessee, its successors and assigns, the option to make successive extensions or renewals of the original lease for terms of nine years each, not to extend beyond 99 years from the original date of execution. The option may be exercised upon written notice and payment by the lessee of a rental for the extension term equal to the real property taxes and local assessments paid on the land by the lessor during the nine years immediately preceding the expiration of such nine year term. The agreement acknowledged receipt from the lessee, upon execution, of $20,000 as consideration for the sale of the timber, for the lease, and for the option to renew granted thereunder. It was jointly stipulated below that Continental and its predecessors in title had complied with all provisions of the 1950 agreement and had, until 1969, when payment was tendered and refused, paid as required the rental fee for each renewal period.[1]

The trial court held that no rental consideration had been paid for the basic nine-year lease period, apparently treating the payment of the $20,000.00 as consideration only for the grant of the leasehold, the grant of the option rights, and the sale of the standing timber. It declared the basic lease invalid, ordered the attempted 1968 renewal can-celled, and reserved to Brewton the right to recover damages from Continental for all timber cut and removed since the date of Brewton's acquisition of the fee.

Under the unambiguous terms of the 1950 agreement, the finding of lack of rental consideration for the original lease term is clearly erroneous. The agreement plainly recites that $20,000 was received as consideration for the lease. Payment was made of the fixed "price" required by Louisiana law as consideration for the conveyance of a leasehold interest. *See* Arata v. Louisiana Stadium and Exposition District, 1969, 254 La. 579, 225 So.2d 362, 366; Civil Code of Louisiana, Arts. 2669, 2670. The fact that the agreement does not recite or refer to this payment as rent is of no significance.

Furthermore, the agreement makes it quite clear that payment of the $20,000.-00 was also consideration for the grant of the option for renewal rights, and that the basis for determining the amount of renewal rentals was definite and readily ascertainable. *See Arata, supra.* The rentals have been periodically paid to continue the viability of Continental's leasehold interest.

Since the district court found the basic lease invalid it did not reach the other issues raised by the parties. We reverse and remand for consideration of the undisposed of issues. Costs are taxed against Brewton.

Reversed and remanded.

## APPENDIX

2. As a part of the consideration of this agreement, Seller-Lessor leases and lets and by this act does lease and let unto the Buyer-Lessee, its successors and assigns, to the extent herein provided, and subject to the terms and *conditions hereof, the real* estate hereinbefore first described for a *term of nine (9) years from the date hereof* for the purposes herein expressed, and *hereby grants to Buyer-Lessee, its successors and*

---

1. The pertinent provisions of the agreement appear as an Appendix to this opinion.

assigns, the right and option to make successive extensions or renewals of this lease for a term of nine (9) years each upon the conditions herein set forth, provided, that this lease may not be extended beyond a date ninety-nine (99) years from the date hereof. In order to renew this lease, Buyer-Lessee shall give written notice to Seller-Lessor of its intention to do so before the expiration of each successive nine-year term.

3. *Buyer-Lessee may successively renew or extend this lease for successive nine year terms by giving Seller-Lessor written notice of its intention to do so and by paying to Seller-Lessor on or before the date of the expiration of each nine year term an amount equal to the real property taxes and local assessments which Seller-Lessor has paid on land described in this lease during the nine years immediately preceding the expiration of such nine year term.*

Seller-Lessor shall notify Buyer-Lessee at least thirty days prior to expiration of each nine year term that the lease will expire unless renewed and at the same time advise as to the amount of the necessary renewal payment. If such notice is not timely given, then Buyer-Lessee shall have thirty days after Seller-Lessor gives such notice in which to give notice of intent to renew and to make the payment herein provided for.

6. The Buyer-Lessee, upon the execution of this instrument, has paid to the Seller-Lessor the sum of *Twenty Thousand and no/100 ($20,000.00) Dollars* in cash, and other good and valuable consideration, the receipt of which is hereby acknowledged and a full acquittance is granted therefore; *the same being paid as consideration for the sale of the timber and for this lease, as well as for the options to renew and all other rights hereby granted to Buyer-Lessee.*

7. The Seller-Lessor and Buyer-Lessee agree that this sale and lease agreement is made and is subject to the following conditions and stipulations which are a part of this agreement and the consideration therefor:

(h) Each Seller-Lessor warrants the title to the timber, wood and other forest products herein leased only so far as the interest owned by each Seller-Lessor, but it is agreed that in the event of eviction of the Buyer-Lessee from any portion of said land on account of failure of title to any portion thereof, that the obligation of the Seller-Lessor under his warranty shall be limited to the refund of the proportionate part received by him in cash of the sum of Fifty and No/100 ($50.00) Dollars per acre on the lands to which title fails or from which Buyer-Lessee is evicted, at the time of such eviction or title failure.